IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 25-174 |
| ) | |
| JUSTIN HUERFANO ) | |

**MEMORANDUM OPINION**

Presently before the Court is Defendant's Motion for Review of Detention Order and Request for a Hearing, wherein he requests that the Court enter an order releasing him from pretrial detention, which is opposed by the Government. (*See* Docket Nos. 32, 34, 35). After careful consideration of the parties' positions, review of the detention hearing transcript and evidence entered at the detention hearing, and the referenced Pretrial Services Report, as well as additional evidence submitted by the parties in connection with their briefing on the Motion, (Docket Nos. 24, 32 at 10-12, 34-1, 34-2, 35-1), Defendant's Motion will be denied. As required by 18 U.S.C. § 3142(i)(1), the following includes the Court's findings of fact and statement of the reasons for detention.

**I.    BACKGROUND**

**A. PROCEDURAL HISTORY**

On June 24, 2025, Defendant was charged in a five-count Indictment with the following: at Count One with conspiracy to commit bank fraud, in violation 18 U.S.C. § 1349, for conduct occurring from in and around October 2022 to in and around May 2025; at each of Counts Two and Three with bank fraud, in violation of 18 U.S.C. §§ 1344(1) and 2, for conduct occurring on or about November 5, 2024 and on or about December 11, 2024; and at each of Counts Four and Five with aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2, for conduct

occurring on or about November 5, 2024 and on or about December 11, 2024.  (Docket No. 3). Following the issuance of a warrant for Defendant's arrest, he was apprehended at John F. Kennedy International Airport on July 15, 2025.  (Docket Nos. 7; 9-2 at 2, ¶ 3).  Defendant made an initial appearance in the Eastern District of New York, and he subsequently was transferred to this District, where he was arraigned on August 12, 2025, and pled not guilty to the charges. (Docket Nos. 9, 14, 15).  After a detention hearing on August 18, 2025, Magistrate Judge Maureen P. Kelly found that the Government proved by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance as required and thus he was ordered to remain detained pending trial or other disposition of this matter. (Docket Nos. 20, 21).

Defendant now moves for revocation of the detention order, arguing that he is not a flight risk.  (*See generally* Docket Nos. 32, 35).  In support, Defendant submits that "additional evidence that was not available at the original detention hearing . . . may impact the Government's inference of flight and this Court's consideration of release."  (Docket No. 32, ¶ 6).  The referenced additional evidence includes copies of receipts for JetBlue airline tickets to the Dominican Republic for Defendant and several of his family members and a letter from his aunt, Tracy Holguin.  (Docket Nos. 32 at 10-12; 35-1).  According to Ms. Holguin, Defendant's family was traveling to the Dominican Republic for "a long-awaited family gathering and celebration for [her] mother's birthday."  (Docket No. 35-1 at 2).  Therefore, Defendant maintains that he "had an explicit purpose for his trip that was consistent with his plan to attend a family vacation and returning at the conclusion."  (Docket No. 35 at 2).

The Government opposes Defendant's Motion to revoke the detention order, reiterating that Defendant is a flight risk and his "newly discovered evidence" does not persuasively rebut the

2

Government's allegations concerning his attempted flight to the Dominican Republic when he was arrested in this case. (Docket No. 34 at 4). Furthermore, those allegations were only one factor among many that supported Judge Kelly's detention order, as she cited other factors indicative of non-appearance in issuing the detention decision. (*Id.* at 2, 4).

After reviewing the transcript of the detention hearing before Judge Kelly and considering the parties' briefing, along with Defendant's additional evidence, the Court concludes that Judge Kelly correctly determined that the Government has proved, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure Defendant's appearance as required, thus he must be detained pending trial or other disposition of this matter. (*See* Docket No. 21 at 3).

### B.  EVIDENCE ADDUCED AT THE DETENTION HEARING

At the detention hearing, the Government presented the testimony of James Degori, who is a task force officer with the United States Postal Inspection Service and a detective with the Beaver Police Department. (Docket No. 24 at 6). TFO Degori specializes in mail theft and bank fraud investigations. (*Id.*).

Relevant here, TFO Degori participated in the investigation of a customer impersonation bank fraud scheme, which allegedly involved Defendant. (Docket No. 24 at 7). TFO Degori first testified how such a scheme works, explaining that conspirators use fraudulent identity documents and forged checks to effectuate withdrawals from the bank accounts of true account holders. (*Id.* at 7-8). A person higher up in the conspiracy recruits individuals known as "faces," who typically are homeless or drug-dependent individuals. (*Id.* at 9, 11). The recruiter provides a "face" with the true account holder's personal identification information, along with a washed check, and the "face" then impersonates the true account holder at the bank in order to make a cash withdrawal

3

from the true account holder's bank account.  (*Id.* at 8-10).  The recruiter takes the "face" to the bank to execute the fraudulent transaction, and then generally receives most of the money from the cash withdrawal, while the "face" only receives as compensation five to ten percent of the transaction.  (*Id.* at 10-11).

Turning to the customer impersonation bank fraud scheme in this case, TFO Degori testified that five "faces" interviewed in connection with the investigation identified Defendant in a photo array as an organizer of the scheme who gave them direction.  (Docket No. 24 at 12-13).  Other corroborating evidence linking Defendant to the scheme included the following: a fingerprint analysis was positive for Defendant's fingerprint on a check obtained from one of the "faces"; Defendant was linked to mail theft in Texas and in New York City, most recently in 2025; and a traffic stop on Interstate 80 in Mercer County of a vehicle in which Defendant was a passenger resulted in law enforcement discovering checks from victims that were not yet washed.  (*Id.* at 13-14).  Additionally, TFO Degori testified concerning jail calls made by a female "face" who was arrested on July 8, 2025, after impersonating a true account holder at the First National Bank in Murrysville, including a call on July 13, 2025, which was admitted into evidence at the detention hearing as Government's Exhibit A.  (*Id.* at 14-19).  In summary, the female "face" contacted her boyfriend and requested that he send a text message for her.  (*Id.* at 18).  During the conversation, the boyfriend commented that his text message included the phrase "not looking good for you and Jo-Jo," which was one of Defendant's nicknames.  (*Id.*).  Two days later on July 15, 2025, Defendant was arrested at JFK International Airport.  (*Id.* at 19).  Defendant initially booked a one-way flight to the Dominican Republic on July 12, 2025, which was modified for final departure on July 15, 2025.  (*Id.*).

TFO Degori was then subject to cross-examination by the defense.  (Docket No. 24 at 20-

24, 27-28). The defense did not present any evidence at the detention hearing. (*Id.* at 29).

After receiving the foregoing evidence at the hearing, Judge Kelly analyzed the four factors required to be considered under the Bail Reform Act,[1] and found that there is no condition or combination of conditions that will reasonably assure Defendant's appearance if he were to be released. (Docket No. 24 at 35-42). Accordingly, Judge Kelly entered an order detaining Defendant pending trial or other disposition of this matter. (*Id.* at 42; Docket No. 21). Defendant's appeal of the detention order ultimately followed on December 8, 2025. (Docket No. 32). Briefing on Defendant's Motion, and the submission of supplemental evidence, concluded on January 12, 2026, and the matter is now ripe for disposition. After review of the record, the Court affirms the detention order.

## II.     LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.* (the "BRA"), governs release and detention pending judicial proceedings. Pursuant to 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." A district court exercises *de novo* review over a detention order entered by a magistrate judge. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). "De novo review does not

---

1      As to those factors, Judge Kelly commented that the charged offenses are serious because they involve bank fraud and identity theft; the weight of the evidence is substantial and includes five "faces" identifying Defendant in a photo array as the person who recruited them into the bank fraud scheme, his fingerprint was found on a check, stolen checks were found in a vehicle in which he was a passenger, and jail calls involving an arrested "face" referenced a text message that it was not looking good for Jo-Jo, which was a nickname associated with Defendant; there is no information concerning lawful employment or financial resources for Defendant; his criminal history includes four arrests on fraud charges, four theft-related charges, and a bench warrant for failure to appear; and Defendant was arrested at the airport when he was attempting to board a one-way flight to the Dominican Republic just days after one of the "faces" was arrested. (Docket No. 24 at 37-41).

require an additional evidentiary hearing[,]" and the district court "may make its independent determination based solely upon the evidence introduced at the prior hearing." *United States v. Kolonis*, No. 2:20-cr-0146, 2020 WL 5253192, at *3 (W.D. Pa. Sept. 3, 2020) (quoting *United States v. Burgess*, No. 2:09-cr-150, 2009 WL 2038148, at *2 (W.D. Pa. July 8, 2009)); *see also United States v. Bastianelli*, Crim. No. 17-305, 2018 WL 1015269, at *4 (W.D. Pa. Feb. 22, 2018) ("The Court retains the discretion to make its determination after reviewing the record developed before the U.S. Magistrate Judge or to accept additional evidence from the parties and rule on the expanded record."). The Court may incorporate the transcript of the proceedings before the magistrate judge and does so here. *See United States v. Chagra*, 850 F. Supp. 354, 357 (W.D. Pa. 1994). The Court "may also consider any additional evidence or proffers submitted in conjunction with any supplemental proceedings," which it likewise does here.[2] *Burgess*, 2009 WL 2038148, at *1 (citation omitted).

As noted, the availability of pretrial release is controlled by the BRA, which provides that a defendant must be released on his personal recognizance or upon execution of an unsecured appearance bond unless the court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Following a hearing, if the judicial officer finds that no condition or combination of conditions of release will reasonably assure the defendant's appearance and the safety of the community, detention must be ordered. 18 U.S.C. § 3142(e)(1). In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of the community, the judicial officer must consider the § 3142(g)

---

2   As stated, the Court has reviewed the transcript of the proceeding conducted by Magistrate Judge Kelly, considered the Pretrial Services Report and the additional information and material set forth in Defendant's Motion, the Government's Response and Defendant's Reply, and concludes that a hearing is not necessary because the record has been fully developed.

6

factors concerning:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## III.    **DISCUSSION**

After considering the relevant factors under § 3142(g) in this case, Judge Kelly found that the Government sustained its burden to prove by a preponderance of the evidence that Defendant is a flight risk and that no condition or combination of conditions will assure his appearance at trial.  *See United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986).  This Court agrees.  In reaching this decision, the Court has conducted an independent examination of the record as a whole and balanced the four factors set forth in 18 U.S.C. § 3142(g).  For reasons that follow, the Court finds that the available information and proffered evidence on the relevant factors weigh in favor of detention.

A. **Nature and Circumstances of the Offenses Charged**

In the Court's estimation, Defendant's alleged conduct related to bank fraud and identify theft is very serious given that it involved utilizing individual bank customers' personal information and forged checks to make fraudulent cash withdrawals from their bank accounts. According to TFO Degori, the amount of loss involved in this case is approximately $194,000, (Docket No. 24 at 12), which underscores the serious nature of the charged offenses and the resulting harm to the affected victims. Consequently, the nature and circumstances of the offenses charged, while not dispositive, weigh in favor of pretrial detention when considered in conjunction with the other factors discussed below.

B. **Weight of the Evidence**

As a general matter, the Court observes that the weight of the evidence against Defendant is strong, as reflected by the grand jury's return of the Indictment which establishes probable cause that the offenses occurred. More specifically, while Defendant is presumed innocent of the charged offenses, the Government introduced evidence at the detention hearing indicating that Defendant was involved in orchestrating a customer impersonation bank fraud scheme, in which he recruited "faces" who used fraudulent identity documents and forged checks to execute withdrawals from the bank accounts of true account holders as detailed above. Therefore, while recognizing that Defendant is presumed innocent of the charged offenses, the Court agrees with Judge Kelly's reasoning that the weight of the evidence against him is substantial and favors pretrial detention.

C. **History and Characteristics of Defendant**

As to Defendant's background and characteristics, he is 26 years old, he was born in Manhattan, New York and was most recently residing with his mother in the Bronx, New York,

8

where he has lived for the majority of his life.[3]  Defendant's father lives in Yonkers, New York and his sister lives in New Rochelle, New York.  Defendant reported that the majority of his family now reside in the Dominican Republic.  He has positive relationships with his family members, except his father.  Defendant is single and has a 5-year-old child.

As to community ties, it is appropriate to consider whether a defendant has ties to the district where the prosecution is pending.  *See United States v. Watson*, Crim. No. 20-218, 2020 WL 7425252, at *9 (W.D. Pa. Dec. 18, 2020) (Hardy, J.) (citing *United States v. Bucio*, Crim. No. 5:17-055-DCR, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (the defendant's lack of any community, financial, family or employment ties to the district where prosecution was pending weighed in favor of revoking release order); *United States v. Villegas*, No. 3:11–CR–28, 2011 WL 1135018, at *7 (E.D. Tenn. Mar. 25, 2011) ("[A]lthough the defendant has ties with the community in which he lives in California, the defendant has no ties with this District, and the Court may consider this fact.") (further citing *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (finding that "community" embraces ties to the community in which the charges are brought and the community in the United States to which the defendant has ties)); *United States v. Rivera*, 90 F. Supp. 2d 1338, 1343 (S.D. Fl. 2000) (observing that a court should consider a defendant's ties to the community in which he faces prosecution)).  In this case, Defendant has no ties whatsoever to the Western District of Pennsylvania where this case is pending.

The Court recognizes that Defendant has ties to the Bronx, New York area where he has resided for the majority of his life and his mother, father, and sister currently live in New York, but notes that he also has family ties to the Dominican Republic.  As stated, the majority of

---

3   Defendant's background, residence, family ties, employment history, physical and mental health, substance abuse history and criminal history are set forth in the Pretrial Services Report.  The Court notes that neither party has objected to the contents of this Report relative to Defendant's background and history.

Defendant's family now resides in the Dominican Republic. Defendant traveled to the Dominican Republic in April 2025, and he was attempting to board a one-way flight there when he was arrested in this case. The circumstances leading up to Defendant's arrest at the airport support the logical inference that he presents a flight risk. Within days after a "face" was arrested in July 2025, Defendant purchased a one-way ticket to the Dominican Republic. (Docket No. 24 at 15, 19). A jail call on July 13, 2025 involving the arrested "face" included discussion of a text message sent at her request indicating that it was not looking good for Jo-Jo, which was a nickname associated with Defendant. (*Id.* at 18, 19). On July 15, 2025, Defendant was arrested at the airport before boarding the one-way flight to the Dominican Republic. (*Id.* at 19).

The Court is not persuaded by Defendant's current contention that "additional evidence that was not available at the original detention hearing . . . may impact the Government's inference of flight and this Court's consideration of release." (Docket No. 32, ¶ 6). The additional evidence consisting of copies of JetBlue airline ticket receipts to the Dominican Republic for Defendant and several of his family members and a letter from his aunt, Tracy Holguin, explaining that Defendant's family was traveling to the Dominican Republic for "a long-awaited family gathering and celebration for [her] mother's birthday," (Docket Nos. 32 at 10-12; 35-1 at 2; 35-1 at 3-39), does not alter the conclusion that Defendant is a flight risk. Even if Defendant did not have the airline ticket receipts and the letter from his aunt available for presentation at the detention hearing, it defies logic that he would not have proffered that he intended to travel for a family vacation to celebrate a relative's birthday as he now maintains. Regardless, this Court finds that Defendant presents a risk of flight, given his lack of ties to this District and family ties to the Dominican Republic, particularly considering other salient factors in this case regarding his financial circumstances and criminal history.

As to Defendant's financial circumstances, he was unemployed when he was arrested in this case, and he previously worked part-time for an unspecified period as an Uber Eats driver. Defendant did not report any other work history, and he denied having any significant assets or liabilities.

Turning to Defendant's criminal history, the instant offense is not his first brush with the law. Defendant has a pending New York state case involving theft related charges, and he has a number of other prior fraud or theft-related convictions, including unlawful possession of a personal ID, conspiracy to commit criminal use of a financial card, theft of mail, and attempted theft by unlawful taking. Defendant was sentenced to short periods of incarceration for several of his prior offenses, the most significant of which was 7 months' imprisonment. In contrast, he is now exposed to a statutory term of up to 30 years' imprisonment at each of Counts One, Two, and Three and a statutory term of 2 years' imprisonment at each of Counts Four and Five, which must be imposed consecutively to any other term imposed. In light of the substantial penalties Defendant faces if convicted, this Court is not persuaded that any amount of bond or any conditions of release would deter him from fleeing. *See, e.g.*, *United States v. Oliver*, Crim. No. 16-40, 2016 WL 1746853, at *9 (W.D. Pa. May 3, 2016) ("[T]he risk of Defendant's potential to flee from prosecution is heightened due to the substantial penalties he faces if convicted in this case. . . ."); *United States v. Ewell*, Crim. No. 13-125, 2013 WL 4479029, at *3 (W.D. Pa. Aug. 20, 2013) ("The potential for flight from prosecution is now greater as [the defendant] has been charged with such a serious offense and faces very severe penalties, if convicted."); *United States v. Miller*, Crim. No. 00-103-02, 2000 WL 633048, at *4 (E.D. Pa. May 9, 2000) (noting that "a serious potential penalty provides a strong incentive to flee"). Overall, the Court finds that Defendant's history and characteristics weigh in favor of pretrial detention.

**D. <u>Nature and Seriousness of Danger to Any Person or the Community if Released</u>**

The final factor requires consideration of the nature and seriousness of the danger to any person or the community if Defendant is released. In assessing danger to the community, the potential for physical harm or violence is not the only relevant consideration. *See United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) (holding that "a defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute a sufficient risk of danger" under the Bail Reform Act); *United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007) ("A danger to the community does not only include physical harm or violent behavior. The concept of 'safety' may include non-physical harm."). As this Court previously has recognized, instances of fraudulent conduct also serve to demonstrate that an individual presents a risk of danger to unsuspecting members of the community and the public at large. *See United States v. Frasinelli*, Crim. No. 21-300, 2024 WL 1640633, at *4 (W.D. Pa. Apr. 15, 2024) (Hardy, J.) (citing *United States v. Giampa*, 904 F. Supp. 235, 358 (D.N.J. 1995) ("When assessing danger to the community, danger may, at least in some cases, encompass pecuniary or economic harm.") (internal quotation marks and citation omitted); *United States v. Patel*, Crim. No. 20-mj-14001, 2020 WL 1698785, at *7 (D.N.J. Apr. 8, 2020) (recognizing that a defendant who engaged in non-violent fraud offenses nonetheless presented a danger to the public given risk that he could resume fraudulent activity)).

Such a risk exists in this case. As discussed, Defendant has prior fraud and theft-related convictions for which he has been sentenced to periods of incarceration. The fact that Defendant's prior sentences of incarceration did not deter him from engaging in the alleged fraudulent activity charged in this case suggests that he may be inclined to repeat his illicit activity if he were to be released. As also discussed, Defendant is currently unemployed and denied having any significant

assets, thus he lacks any legitimate source of income. Those circumstances only exacerbate the risk that Defendant could resume participation in the alleged fraudulent activity and present an ongoing danger to the public if he were to be released. As such, this final factor weighs in favor of pretrial detention.

In sum, after considering the record as a whole, including the serious nature and circumstances of the offenses charged, the substantial weight of the evidence against Defendant, his history and characteristics, and the nature and seriousness of the danger to the community posed by Defendant's release, there is no condition or set of conditions which will reasonably assure his appearance as required if he were to be released pending trial in this matter. Accordingly, pretrial detention was, and is, appropriately ordered.

### IV. CONCLUSION

Given the Court's finding that no condition or combination of conditions of release will reasonably assure Defendant's appearance as required if he were to be released, his Motion for Review of Detention Order and Request for a Hearing, (Docket No. 32), is denied.

An appropriate Order follows.

<i>s/ W. Scott Hardy</i><br>
W. Scott Hardy<br>
United States District Judge

Date: January 29, 2026

cc/ecf: All counsel of record
       United States Marshal
       United States Pretrial Services